| | | |
|---|---|---|
| MICHAEL ELLIS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 13 CV 2382 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| CITY OF CHICAGO, ANTONIO | ) | |
| VALENTIN, NOEL ESQUIVEL, | ) | |
| CARLOS ROJAS, and JESUS | ) | |
| DELAROSA, JR., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Michael Ellis brings this lawsuit against the City of Chicago and four Chicago Police Department Officers, specifically Antonio Valentin, Noel Esquivel, Carlos Rojas, and Jesus Delarosa, Jr. Ellis alleges civil-rights violations under 42 U.S.C. § 1983.[1] Ellis's claims arise out of his arrest for unlawful possession of a firearm, which took place on April 27, 2011. R. 47, Am. Compl.[2] Ellis alleges that the Defendant Officers fabricated police reports and provided false testimony in Ellis's state criminal proceedings to support their arrest of Ellis, and to obtain a conviction against him. *Id.* ¶¶ 7-8, 13, 18. The City and the Defendant Officers have jointly moved to dismiss [R. 64] Ellis's first amended complaint under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Defendants' motion is granted.

---

[1]This Court has subject matter jurisdiction over the case under 28 U.S.C. § 1331.
[2]Citations to the Court's docket are cited as "R." followed by the docket number.

# I. Background

In deciding dismissal motions, the Court accepts as true the factual allegations in the complaint and draws all reasonable inferences in the plaintiff's (here, Ellis's) favor. *McGowan v. Hulick*, 612 F.3d 636, 637 (7th Cir. 2010). As discussed later, however, Ellis has been convicted of unlawfully possessing a gun based on the same events at issue in his complaint, so there are limits to what Ellis can successfully allege with regard to certain facts.

According to the complaint, on April 27, 2011 at around 11 p.m., Officers Esquivel and Delarosa, who were working with Officers Rojas and Valentin, approached Ellis's car and arrested him for unlawful possession of a firearm. R. 47, Am. Compl. ¶¶ 5-7. A preliminary hearing was held in state court on May 4, 2011. *Id.* ¶ 12. Only Officer Valentin testified at that hearing. *Id.* ¶ 13. Valentin stated that he saw Ellis look around in multiple directions, open the door of a parked car, reach into his waistband, and toss an item, which appeared to be a handgun, into the car. *Id.*; *see also* R. 1, Exh. 1. at 8 (preliminary hearing transcript). According to Valentin, Officer Delarosa then recovered a revolver from the car. Am. Compl. ¶ 13.

Following the preliminary hearing, a grand jury charged Ellis with being an armed habitual criminal, with unlawful use of a weapon by a felon, and with aggravated unlawful use of a weapon. *Id.* ¶ 14. Ellis filed a motion to suppress evidence. *Id.* ¶ 15. Both Officers Esquivel and Valentin testified at the suppression hearing, which was held in August 2012. *Id.* ¶¶ 16-17. Officer Valentin's testimony was similar to the testimony he provided at the preliminary hearing. He did,

however, add that he prepared a police report for this case, and that he relayed what was happening on the night of the arrest over the car radio before taking Ellis into custody. *Id.* ¶ 17.

Officer Esquivel's testimony was similar to Officer Valentin's. Officer Esquivel testified that he is Officer Valentin's partner, that he approached what appeared to be Ellis's car from the front, and that he watched Ellis toss a gun inside the car before starting to walk away. *Id.* ¶ 16. Esquivel stated that he then approached the car and saw a nickel-plated gun on the front passenger seat, which turned out to be a revolver. *Id.* According to Esquivel, two other officers[3] retrieved the gun from the car. *Id.* Esquivel then approached Ellis and took him into custody. *Id.* Esquivel testified that the officers did not have a warrant to search Ellis's car that night, and that they did not know whether the gun was being lawfully transported at the time. *Id.*

Ellis's motion to suppress was ultimately denied, R. 64-2, Exh. B, Mot. to Suppress Hrg. (Day 2, Aug. 24, 2012) at 20-21, and a two-day bench trial was held on May 31, 2013 and June 18, 2013. *Id.* ¶ 20. Officers Esquivel, Delarosa, and Valentin all testified at trial. *Id.* On the second day of the bench trial, June 18, 2013, Ellis was convicted and sentenced to life imprisonment. *Id.* ¶ 21; R. 64-1, Exh. A at 10.

---

[3]In his testimony, Officer Esquivel states that "Officers Suria and Delarosa opened the door [of Ellis's car] and recovered the gun." *See* R. 82-1, Supplemental Exh. B, Mot. to Suppress Hrg. (Day 1, Aug. 15, 2012) at 9. This is the only time that Officer Suria's name appears to be mentioned. It is not clear whether Esquivel misspoke at the hearing. The parties make no mention of this issue. In any event, which officer recovered the gun ends up making no difference to the decision on the dismissal motion.

Ellis filed a *pro se* complaint in this case in March 2013, *before* he was convicted in state court in June 2013. R. 1, Compl.; R. 64-1, Exh. A at 10. On January 19, 2015, well *after* Ellis was convicted, Ellis filed an amended complaint with a court-recruited *pro bono* counselor. Am. Compl. In addition to the allegations described above, Ellis alleges that the Defendant Officers falsely claimed that he was "unlawfully in possession of a gun," causing him to be arrested, *id.* ¶ 7, and that the Defendant Officers prepared false police reports and provided false testimony in his state criminal proceedings, which resulted in his conviction and corresponding natural-life sentence, *id.* ¶¶ 18, 20-21. Based on these allegations, Ellis raises six claims for relief. First, Ellis claims that the Defendant Officers' conduct violated his Fourth, Fifth, and Fourteenth Amendment rights. *Id.* ¶¶ 25-27 (Counts 1-3). Next, he alleges that the City of Chicago is liable under *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978), for maintaining policies, customs, and practices that permit officers to believe they can prepare false reports, perform unlawful arrests, and falsely testify under oath. *Id.* ¶ 28 (Count 4). In addition, Ellis claims that the Defendant Officers entered into a conspiracy to effectuate his arrest and conviction, in violation of § 1983 and Illinois law. *Id.* ¶¶ 23, 29 (Count 5). Finally, Ellis brings a state-law intentional infliction of emotional distress claim against the Defendant Officers, based on the "extreme" emotional distress he suffered and continues to suffer while detained and incarcerated. *Id.* ¶ 30 (Count 6).

The City and the Defendant Officers have moved to dismiss all counts under Federal Rule of Civil Procedure 12(b)(6). R. 64, Defs.'s Joint Mot. to Dismiss. Both

Ellis and his attorney (who has since withdrawn),[4] filed response briefs to the Defendants' dismissal motion. R. 76; R. 89. Because Ellis and his attorney could not agree over the proper response to some of Ellis's claims (namely, Ellis's *Monell* claim and emotional distress claim), *see* R. 76, Pl.'s Resp. Br. at 6-7, Ellis filed a *pro se* response brief addressing those claims, *see* R. 89, Pl.'s Pro Se Resp. Br. His attorney addressed the remaining claims. *See* Pl.'s Resp. Br. Both Ellis and his attorney did, however, agree that Ellis's Fifth Amendment claim (Count 2) was not viable. Ellis has voluntarily dismissed that claim. *Id.* at 2. Although courts do not usually allow both *pro se* and counsel briefs at the same time, the Court will consider both.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

---

[4]The Court allowed recruited counsel to withdraw after Ellis made unreasonable accusations against her. R. 92. Later, Ellis asked again for an attorney. R. 93. But after further deliberation, the Court will adhere to its prior warnings and prior decision that Ellis would not get another lawyer if he acted unreasonably. The motion for second appointment of counsel, R. 93, is denied.

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *McGowan v. Hulick*, 612 F.3d 636, 637 (7th Cir. 2010) (courts accept factual allegations as true and draw all reasonable inferences in plaintiff's favor). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. And the allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 679.

### III. Analysis

### A. Count One (Fourth Amendment)

Ellis first asserts a § 1983 claim against the Defendant Officers, premised on the allegation that the officers falsely arrested him and violated his Fourth Amendment rights. Am. Compl. ¶ 25. The Defendant Officers assert that Ellis's false arrest claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). The Defendant Officers are correct; after his state-court conviction, Ellis's claim is not cognizable under § 1983.

In *Heck*, the Supreme Court held that a state prisoner may not bring a civil suit questioning the validity of his conviction until that conviction has been set aside. 512 U.S. at 486-87; *Okoro v. Callaghan*, 324 F.3d 488, 489 (7th Cir. 2003). At issue in *Heck* was whether a state prisoner convicted of voluntary manslaughter could challenge the constitutionality of his conviction in a § 1983 suit. 512 U.S. at 478-79. While his state appeal remained pending, he filed a § 1983 lawsuit against county prosecutors and one of the state police investigators involved in his arrest, alleging various constitutional violations, which if true, would have established the invalidity of his state conviction. *Id.* at 478-80. His state conviction was later upheld, and the Seventh Circuit affirmed the dismissal of his § 1983 claims. *Id.* at 479; *Heck v. Humphrey*, 997 F.2d 355, 359 (7th Cir. 1993). The Supreme Court also affirmed, explaining that: "[W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. at 486-87.

Here, in June 2013, Ellis was convicted in state court of being an armed habitual criminal, in violation of 720 ILCS 5/24-1.7(a), and of unlawfully possessing a firearm, in violation of 720 ILCS 5/24-1.1(a). R. 64-1, Exh. A (Certified Statement of Conviction from the Circuit Court of Cook County). He now asserts in this civil lawsuit that he never had a gun that night, Am. Compl. ¶ 7 ("Defendants caused [Ellis] to be arrested, falsely alleging that [Ellis] was unlawfully in possession of a

gun"), and suggests that the Defendant Officers planted it, *id.* ¶ 19 ("The gun allegedly recovered from [Ellis's] vehicle did not bear [Ellis's] fingerprints"); *see also* Pl.'s Resp. Br. at 5 ("Plaintiff also suggests that Defendant Officers planted the gun … "). He also insists that the Defendant Officers created false police reports and provided false testimony in his criminal proceedings to support his unlawful arrest and convictions. Am. Compl. ¶¶ 8, 18, 20-21. If these allegations are true, then Ellis's convictions were necessarily invalid. The testimony provided by the Defendant Officers was an essential part of the evidence against Ellis in his state criminal case, as was the allegedly planted gun. If Ellis were to prevail on his false arrest claim here, then that would mean he did not possess the gun—and that, in turn, would necessarily undermine his state-court conviction. This is exactly the type of claim that *Heck* precludes. Thus, unless and until Ellis overturns his state-court conviction, which he has yet to do, his false arrest claim is barred by *Heck* and must be dismissed. *See Okoro*, 324 F.3d at 489 (holding that *Heck* barred plaintiff's § 1983 claims because plaintiff's assertion that "he was not trying to sell the officers heroin, as they testified" would undermine his state conviction, as "that testimony was an essential part of the evidence against [him] in the criminal case").

Rather than challenge the applicability of *Heck* to his false arrest claim, Ellis instead asks the Court to stay his claim. Pl.'s Resp. Br. at 3-4. In support of his request, Ellis points to the Supreme Court's decision in *Wallace v. Kato*, 549 U.S. 384 (2007). In *Wallace*, the Supreme Court stated that if a plaintiff files a false arrest claim before he has been convicted then a district court may "stay [the

§ 1983] civil action until the criminal case … [ha]s ended." *Id.* at 393-94. Ellis contends that, under *Wallace*, this Court should stay his false arrest claim, presumably until his appeal to the Illinois Appellate Court is completed.

Ellis's argument is unpersuasive. It is true that Ellis filed his initial *pro se* complaint in this civil action—and with it his false arrest claim—before he was convicted in state court. R. 1 (*pro se* complaint filed March 29, 2013); Am. Compl. ¶ 20-21 (state court bench trial held on May 31 and June 18, 2013). But Ellis's criminal case has long since ended. And importantly, it ended with Ellis being convicted. What Ellis does not mention is that after the Supreme Court made the statement Ellis cites above in *Wallace*, it then went on to explain that "[i]f the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, [then] *Heck* … require[s] dismissal." 549 U.S. at 394. Ellis was ultimately convicted in state court, and he has yet to get that conviction overturned. Once Ellis received that conviction, *Heck* kicked in to bar his § 1983 false arrest claim, which, as the Court already discussed above, would call into question the validity of Ellis's state court conviction if Ellis were to prevail on the claim. Until Ellis gets his conviction set aside, his false arrest claim is barred by *Heck*.

Ellis also contends that if the Court does not stay his claim, then he might end-up unfairly outside of the statute of limitations even if the Illinois Appellate Court later overturns his conviction. Pl.'s Resp. Br. at 4. It is true that false arrest claims accrue—that is, the two-year statute of limitations clock starts ticking— when the arrestee is detained by a judge (in other words, when the arrest is no

longer the source of the detention, and instead the judicial finding of probable cause is the basis for detention). But that does not mean Ellis has a statute of limitations problem. To the contrary, at the very start, he filed this suit on time—his arrest was in late April 2011, and he filed this suit in March 2013. Once the bar in *Heck* arose because of his June 2013 bench-trial conviction, then *Heck* required dismissal because, at that point, his claim was no longer cognizable and would only become cognizable if—and *when*—his conviction is overturned. To address potential statute of limitations issues following a *Heck* dismissal, *Heck* adopted a deferred-accrual rule, which affects the way in which statutes of limitations are calculated for § 1983 claims. 512 U.S. at 489. *Heck's* deferred-accrual rule tolls the statute of limitations for § 1983 claims while they are barred. *Id.* The tolling applies if a plaintiff's § 1983 action will impugn a "conviction or sentence that has *not* been … invalidated." *Id.* (emphasis added). So the rule delays the accrual date of the § 1983 action until the existing conviction is set aside. *Id.*; *Moore v. Burge*, 771 F.3d 444, 446 (7th Cir. 2014) ("*Heck* holds that a claim that implies the invalidity of a criminal conviction does not accrue, and the statute of limitations does not begin to run, until the conviction is set aside by the judiciary or the defendant receives a pardon.").

What Ellis is really worried about is the discussion of the statute of limitations in *Wallace v. Kato*, 549 U.S. at 386, but Ellis is not in the same boat as the plaintiff in *Wallace*. The plaintiff there was arrested in 1994 for murder, and he eventually was tried and convicted. *Id.* Several years later, in 2002, the charges against him were dropped. *Id.* at 386-87. Only then—much longer than two years

after his arrest—did the plaintiff sue the City and several of its officers under § 1983, seeking damages for his unlawful arrest. *Id.* The question the Supreme Court addressed in *Wallace* was whether the plaintiff's false arrest claim accrued at the time of his arrest in 1994, which would have made his suit untimely under the applicable two-year statute of limitations, or whether the claim was subject to deferred accrual under *Heck*, even *before* the plaintiff had been convicted of anything. *Id.*

*Wallace* began with the general principle that the statute of limitations for false arrest claims, where the false arrest is followed by criminal proceedings, "begins to run at the time the claimant becomes detained pursuant to legal process," which in the plaintiff's case occurred in 1994 when he was bound over by a magistrate judge for trial. *Id.* at 391-92. But it kept running for the plaintiff in *Wallace* because he did not file suit within two years and, the Supreme Court held, *Heck*'s deferred-accrual rule does *not* apply until there is a conviction that would give rise to the *Heck* bar. *Id.* at 393. In other words, *Heck*'s deferred-accrual rule only applies if there is an extant conviction. Rather than speculate about an "anticipated future conviction," the Supreme Court concluded that it was better to establish a rule that would encourage timely filing of false arrest claims. *Id.*; *Evans v. Poskon*, 603 F.3d 362, 363 (7th Cir. 2010) ("*Wallace* holds that a claim that accrues before a criminal conviction may and usually must be filed without regard to the conviction's validity."). The opposite rule—one which would allow a false

arrest plaintiff to wait to file suit—would leave the false arrest claim's status unsettled by a maybe-yes, maybe-no outcome in the state prosecution:

> Under such a regime, it would not be known whether tolling is appropriate by reason of the *Heck* bar until it is established that the newly entered conviction would be impugned by the not-yet-filed … § 1983 claim. It would hardly be desirable to place the question of tolling *vel non* in this jurisprudential limbo, leaving it to be determined by those later events, and then pronouncing it retroactively. Defendants need to be on notice to preserve beyond the normal limitations period evidence that will be needed for their defense; and a statute that becomes retroactively extended, by the action of the plaintiff in crafting a conviction-impugning cause of action, is hardly a statute of repose.

*Id.* at 394-95. So the Supreme Court chose a rule that would encourage early filing of false arrest claims. The Supreme Court reasoned that if a timely false arrest claim is filed, and the state prosecution is ongoing, then district courts should stay the § 1983 suit until the state criminal proceedings are completed; if the plaintiff is ultimately convicted, then the district court will no longer need to guess whether the civil suit runs afoul of *Heck*. 549 U.S. at 393-94. The plaintiff's false arrest claim in *Wallace*, therefore, was outside the statute of limitations because he waited much longer than two years after his arrest to file suit.

Here, Ellis is not similarly situated to the plaintiff in *Wallace* for the simple reason that he filed suit within the two-year statute of limitations. So if Ellis's conviction is overturned by the Illinois Appellate Court, then his claim *would* be subject to *Heck's* deferred-accrual rule, even under *Wallace*. In *Wallace*, the Supreme Court addressed a similar scenario to Ellis's and observed the following:

> Had petitioner filed suit upon his arrest and had his suit then been dismissed under *Heck*, the statute of limitations, absent tolling, would have run by the time he obtained reversal of his conviction. If under those circumstances he were not allowed to refile his suit, *Heck* would produce immunity from § 1983

liability, a result surely not intended. Because in the present case petitioner did not file his suit within the limitations period, we need not decide, had he done so, how much time he would have had to refile the suit once the *Heck* bar was removed.

*Wallace*, 549 U.S. at 395 n.4. What this footnote says is that Ellis *can* refile his claim if he is successful in overturning his conviction. How much time Ellis will have to do so is not clear (to avoid testing the limits, he should do it as soon as possible), but the point remains that *Wallace* makes clear that Ellis will at least have some time to refile.

In sum, because Ellis's false arrest claim challenges the validity of his state court conviction, it is not yet cognizable and is barred by *Heck*. Accordingly, the Court dismisses Ellis's Fourth Amendment claim. In the event Ellis is successful in overturning his state-court conviction, he should refile his claim at that time.[5]

### B. Count Three (Fourteenth Amendment Violation)

Ellis next claims that the Defendant Officers violated the Due Process Clause of the Fourteenth Amendment by fabricating evidence and falsely testifying in his state criminal proceedings, which resulted in his wrongful conviction. Am. Compl. ¶ 27; Pl.'s Resp. Br. at 5. Ellis also suggests in his complaint that the Defendant Officers "planted" the gun they recovered from his car. Pl.'s Resp. Br. at 5 ("Plaintiff also suggests that Defendant Officers planted the gun by claiming that [Ellis] was not 'unlawfully in possession of a gun' and that 'the gun allegedly recovered from

---

[5]The Defendant Officers also argue that Ellis's Fourth Amendment claim is barred by the doctrine of collateral estoppel (which is another term for issue preclusion). Defs.'s Joint Mot. to Dismiss at 5. Because the Court has already determined that Ellis's claim is barred by *Heck* and must be dismissed on that ground, the Court need not address the Defendant Officers' issue-preclusion argument.

[Ellis'] car did not bear [Ellis's] fingerprints.'" (citing Am. Compl. ¶¶ 7, 19)). In response, the Defendant Officers assert that Ellis's Fourteenth Amendment claim fails because the "allegations fail to support an evidence fabrication-based due process claim," and because the "claim would run afoul of *Heck*."[6] Defs.'s Joint Mot. to Dismiss at 9.

Contrary to the Defendant Officers' contention, it is possible that the allegations in Ellis's complaint are sufficient to state an evidence fabrication-based due process claim. To be sure, this is a recent development in the case law; until recently, it was legitimate to argue that allegations of evidence fabrication did not give rise to a cognizable due process claim, so long as there was a state-law remedy for malicious prosecution. *See Saunders-El v. Rohde*, 778 F.3d 556, 560 (7th Cir.

---

[6]The Defendant Officers separately argue that to the extent Ellis is making a claim under *Brady v. Maryland*, 373 U.S. 83 (1963), Ellis's allegations are inadequate. *See* Defs.'s Joint Mot. to Dismiss at 8; Defs.'s Joint Reply Br. at 8. Ellis, however, does not appear to be making a *Brady* claim. In his amended complaint, Ellis never mentions *Brady*, or any evidence-suppression claim. He does not cite to *Brady*, nor does he ever claim that he was denied the right to a fair trial in violation of *Brady*. In his response brief, Ellis does note that the Defendant Officers allege that he failed to state a *Brady* claim, but Ellis does not elaborate on this point any further, nor does he clarify whether he is in fact bringing a *Brady* claim.

But Ellis's failure to specifically allege such a claim makes little difference here. Had Ellis brought a *Brady* claim based on his fabricated evidence allegations, it is unlikely he would have prevailed. *See Saunders-El v. Rohde*, 778 F.3d 556, 562 (7th Cir. 2015) (rejecting *Brady* claim where plaintiff "[sought] to charge the officers with a *Brady* violation for keeping quiet about their wrongdoing, [and] not for failing to disclose any existing piece of *evidence* to the prosecution"); *Harris v. Kuba*, 486 F.3d 1010, 1017 (7th Cir. 2007) (upholding dismissal of a *Brady* claim where plaintiff argued "that an officer is 'suppressing' evidence of the truth by making [a] false statement to a prosecutor"); *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1029 (7th Cir. 2006) (rejecting *Brady* claim and noting that "[t]he Constitution does not require that police testify truthfully; rather the constitutional rule is that the defendant is entitled to a trial that will enable jurors to determine where the truth lies"); *Gauger v. Hendle*, 349 F.3d 354, 360 (7th Cir. 2003) (observing that *Brady* does not compel police officers "to disclose truthful versions of statements made during interrogations").

14

2015); *Collier v. City of Chicago*, 2015 WL 5081408, at *6 (N.D. Ill. Aug. 26, 2015); *Bianchi v. McQueen*, 2014 WL 700628, at *9 (N.D. Ill. Feb. 24, 2014).[7] The Seventh Circuit, however, recently dispelled that view, making clear that allegations of evidence fabrication can, under certain circumstances, support a due process claim under § 1983. *See Saunders-El*, 778 F.3d at 559. It is now understood that if a police officer "manufactures false evidence against a criminal defendant," and "that evidence is later used to deprive the defendant of [his] liberty in some way," then that officer violates the defendant's due process rights. *Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012); *see also Fields v. Warrie*, 740 F.3d 1107, 1114 (7th Cir. 2014) ("*Fields II*"); *Armstrong v. Daily*, 786 F.3d 529, 540 (7th Cir. 2015) (explaining that a due process claim may lie where "a law enforcement official [ ] act[s] in bad faith to undermine the reliability of a trial, such as by manufacturing false evidence, arranging for perjured testimony, or destroying exculpatory evidence"). Not every act of evidence fabrication will offend a defendant's due process rights, *Saunders-El*, 778 F.3d at 560; because the Due Process Clause protects against deprivations of life, liberty, or property, in this context it is required that there be a deprivation of liberty, *id.* at 561; *Alexander v. McKinney*, 692 F.3d 553, 557 (7th Cir. 2012); *Collier*, 2015 WL 5081408, at *7. *Compare Saunders-El*, 778 F.3d at 560 (defendant who was "released on bond following his arrest and acquitted at trial" could not "make out an evidence fabrication-based due process violation"), *with Alexander*, 692 F.3d at 557 (explaining that a defendant

---

[7]Recently, the Supreme Court granted *certiorari* in a case from the Seventh Circuit that might provide some very, very welcome instructions on this difficult issue. *Manuel v. City of Joliet*, S. Ct. No. 14-9496 (Jan. 15, 2016).

who spends time in confinement following his arrest or in prison after being wrongfully convicted likely can make out a due process claim).

In this case, Ellis alleges that the Defendant Officers submitted a false police report, planted the gun, and provided false testimony at his criminal trial. If true, this conduct certainly qualifies as fabricating evidence; Ellis alleges that the Defendant Officers not only provided this false evidence, but that they did so while knowing it was false. The "manufactur[ing] [of] evidence," which a police officer or prosecutor "knows to be false," is "[t]he hallmark of a fabrication case." *Petty v. City of Chicago*, 754 F.3d 416, 422-23 (7th Cir. 2014); *see also Fields II*, 740 F.3d at 1110 ("Fabricated testimony is testimony that is made up; it is invariably false."). This allegedly fabricated evidence also harmed Ellis. It was critical to his trial, and without it, it is likely that Ellis would not have been convicted. Thus, for purposes of evaluating a dismissal motion, it can certainly be argued that this allegedly fabricated "evidence deprived [Ellis] of [his] liberty" without due process of law. *Whitlock*, 682 F.3d at 580; *see also id.* at 582 ("Here, the plaintiffs have properly alleged that the act of fabrication caused a harm to them: the fabricated evidence, because it was introduced against them at trial, was instrumental in their convictions.").

The problem, however, is (once again) *Heck.*[8] Ellis runs into a similar *Heck*-problem with his due process claim that he did with his false-arrest claim: his

---

[8]The Defendant Officers make a broader argument, namely, that Ellis has "fail[ed] to state an evidence fabrication claim because he has not established that his conviction was wrongful," which they contend is required for Ellis to sustain a due process claim. Defs.'s Joint Reply Br. at 8 (citing *Bianchi*, 2014 WL 700628, at *10; *Powell v. City of*

allegations, if true, would impugn his state-court conviction. Ellis alleges that the officers introduced fabricated evidence—false testimony, false police reports, and a planted gun—in order to secure his conviction. Given the nature of the alleged fabricated evidence, if Ellis were to prevail on his due process claim, then he would no doubt be calling into question the validity of his conviction. Sometimes a civil-rights plaintiff will make allegations challenging conduct that was not a necessary premise of a conviction, and the bar in *Heck* would not apply. Here, however, the evidence that Ellis claims was fabricated was simply too critical to Ellis's state-court conviction for the Court to conclude otherwise. Thus, just as with Ellis's Fourth Amendment claim, Ellis's Fourteenth Amendment claim is barred by *Heck*, which precludes a § 1983 plaintiff from bringing a claim that, if successful, would impugn the plaintiff's state court conviction. 512 U.S. at 586-87. Until Ellis gets his

---

*Berwyn*, 2014 WL 4674305, at *11 (N.D. Ill. Sept. 19, 2014)). It is true that in those Seventh Circuit cases addressing fabricated evidence-based due process claims, the plaintiffs had generally either been acquitted or had already gotten their criminal convictions set aside. *See, e.g.*, *Whitlock*, 682 F.3d at 573 (plaintiffs' convictions were overturned due to *Brady* violations); *Fields II*, 740 F.3d at 1109 (plaintiff was acquitted in a retrial after serving 17 years in prison); *Alexander*, 692 F.3d at 555 (plaintiff was acquitted by jury at trial). And there are statements in those cases, which can be read as suggesting that a wrongful conviction is required. *E.g.*, *Fields II*, 740 F.3d at 1114 (defining § 1983 plaintiff's injury as "the wrongful conviction"); *Alexander*, 692 F.3d at 557 (describing *Whitlock's* holding as: "[In *Whitlock*,] we held that a prosecutor acting in an investigatory capacity who fabricates evidence that is used to obtain a wrongful conviction violates a convicted defendant's clearly established due process rights"). But the Seventh Circuit has never explicitly stated that a wrongful conviction is necessary in order for a plaintiff to state a due process claim based on fabricated evidence. And at least one Seventh Circuit case has actually suggested otherwise. *See Armstrong*, 786 F.3d at 551 (observing that "[t]hough the most common liberty deprivation cases are based on post-trial incarceration after a wrongful conviction, the essential elements of this constitutional [due process] claim are more general and not limited to wrongful convictions"). Consider a situation where officers fabricate evidence, resulting in the accused's detention before and during trial, and then the government drops the charges. There would be no wrongful conviction, but still arguably there would be a due process violation. In any event, the Court need not decide the issue definitively because Ellis's claim is barred by *Heck*.

criminal conviction set aside, his Fourteenth Amendment claim is not cognizable. Accordingly, this claim is dismissed.

## C. Count Four (*Monell* Claim)

Next, the City argues that Ellis has failed to sufficiently allege his *Monell* claim. Defs.'s Joint Mot. to Dismiss at 10. The City is correct. To establish liability against the City, Ellis "must show the existence of an 'official policy' or other governmental custom that not only causes but is the 'moving force' behind the deprivation of constitutional rights." *Teesdale v. City of Chicago*, 690 F.3d 829, 833 (7th Cir. 2012). In making this showing, Ellis may point to: (1) an actual official policy; (2) a practice or custom that, although not officially authorized, is well-established and widespread; or (3) a deliberate act from a City employee with final policy-making authority. *Gonzalez v. Vill. of West Milwaukee*, 671 F.3d 649, 664 (7th Cir. 2012). Ellis must also establish the existence of a constitutional violation. *Houskins v. Sheahan*, 549 F.3d 480, 493-94 (7th Cir. 2008); *King v. East St. Louis Sch. Dist. 189*, 496 F.3d 812, 817 (7th Cir. 2007) ("It is well established that there can be no municipal liability based on an official policy under *Monell* if the policy did not result in a violation of [a plaintiff's] constitutional rights"); *Alexander v. City of South Bend*, 433 F.3d 550, 557 (7th Cir. 2006) (concluding that a municipality defendant cannot be liable under *Monell* for a policy or custom of inadequately training and supervising its police officers unless the defendant violated a constitutional guarantee).

At the outset, Ellis fails to adequately plead an underlying constitutional violation. In his *pro se* response, Ellis argues that his constitutional injury is a violation of his Second Amendment rights. Pl.'s Pro Se Resp. Br. at 2-3. In state court, Ellis was charged with (among other things) aggravated unlawful use of a firearm in violation of 720 ILCS 5/24-1.6(a)(1), (a)(3)(A). Pl.'s Resp. Br. at 2. Following Ellis's arrest, however, the Seventh Circuit held that this section of the aggravated unlawful use of a weapon statute violated the Second Amendment. *See Moore v. Madigan*, 702 F.3d 933, 935-36 (7th Cir. 2012); *see also* Pl.'s Pro Se Resp. Br. at 3; Am. Compl. ¶ 5. The Illinois Supreme Court reached the same conclusion a year later. *See People v. Aguilar*, 2 N.E.3d 321, 328 (Ill. 2013) (concluding that Sections 5/24-1.6(a)(1), (a)(3)(A), and (d) of the statute are facially unconstitutional and violate the Second Amendment). Pointing to the holdings in *Moore* and *Aguilar*, Ellis argues he has sufficiently pled a Second Amendment violation. (It is worth noting, however, that Ellis was also convicted of being an armed habitual criminal and unlawful use of a weapon by a felon, which remain intact.)

But Ellis's complaint does not contain any factual allegations that would support such a claim. In fact, his complaint actually contradicts the existence of a Second Amendment violation. In his complaint, Ellis denies that he was ever in possession of a gun on the date of his arrest. He states that the Defendant Officers "falsely alleg[ed] that [he] was unlawfully in possession of a gun." Am. Compl. ¶ 7. And he suggests that the Defendant Officers planted the gun in his car, Pl.'s Resp. Br. at 5, asserting that "[t]he gun allegedly recovered from [his] vehicle did not bear

[his] fingerprints," Am. Compl. ¶ 19. The crux of Ellis's complaint is that the Defendant Officers fabricated evidence and provided false testimony in order to secure a wrongful conviction against him, a conviction premised on Ellis possessing a gun he contends he never possessed. If Ellis's factual allegations are taken as true, which they must be at the dismissal stage, then Ellis's Second Amendment rights could not have been violated.[9] Nor could Ellis's Fourth or Fourteenth Amendment rights, as those violations are not yet cognizable under *Heck*. Without a constitutional injury, Ellis's *Monell* claim fails.

The second problem with Ellis's *Monell* claim is that he fails to point to a City policy as the moving force behind his alleged constitutional violation. Initially, Ellis states that the "policy or custom the City enforced against [him] by the police was the [aggravated unlawful use of a weapon] statute 24-1.6(a)(1), (a)(3)(A)." Pl.'s Pro Se Resp. Br. at 2. But the City cannot be held liable for acts done under the command of state or federal law. *Snyder v. King*, 745 F.3d 242, 247 (7th Cir. 2014); *Bethesda Lutheran Homes & Servs., Inc. v. Leean*, 154 F.3d 716, 718 (7th Cir. 1998). Rather, to sustain a *Monell* claim, Ellis must be able to "trace" the Defendant

---

[9]Even if Ellis had alleged in his complaint that the police wrongfully seized his firearm during his arrest, it is not clear that Ellis's Second Amendment rights would have been violated in that scenario either. Seizure claims are generally governed by the Fourth Amendment, not the Second. *Graham v. Connor*, 490 U.S. 386, 396 (1989). And the question of whether a seizure may also constitute an independent violation of an individual's Second Amendment rights is something that the courts are just now starting to address. *Sutterfield v. City of Milwaukee*, 751 F.3d 542, 571 (7th Cir. 2014). Courts that have addressed this issue seem to agree that such seizures do *not* result in a Second Amendment violation. *E.g.*, *Walters v. Wolf*, 660 F.3d 307, 317-18 (8th Cir. 2011) (municipality's failure to return plaintiff's gun after the legal basis for seizing it had disappeared did not constitute an independent violation of plaintiff's Second Amendment rights); *Schaefer v. Whitted*, 2015 WL 4658906, at *4 (W.D. Tex. Aug. 5, 2015) (confiscation of firearms by the police does not constitute an independent Second Amendment violation).

Officers' actions "to a policy or other action of the [City] itself," something the firearms statute is not. *Id.* In a supplemental response, Ellis points to two sections of Chicago's municipal code, which banned handgun possession. R. 99, Pl.'s Pro Se Suppl. Resp. Br. at 1; Chicago, Ill. Municipal Code §§ 8-20-040(a), 8-20-050(c) (2009). But this ban was invalidated in 2010, *see McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010), before Ellis was arrested. So, this defunct ban was not the moving force behind Ellis's supposed constitutional violation. It was certainly not an express policy at the time of Ellis's arrest, and Ellis does not seem to be alleging that reliance on this defunct policy was widespread at the time of Ellis's arrest.

Moving on from the Second Amendment, Ellis suggests that the City has adopted an unwritten policy "permit[ting] its Police Officers to believe that they are allowed to prepare false reports, perform unlawful arrests, and falsely testify under oath." Am. Compl. ¶ 28; *see also* Pl.'s Pro Se Resp. Br. at 2. In his supplemental response, Ellis adds to this by suggesting that the officers were also engaged in the "common place [police] practice" of providing "dropsy" testimony, or testimony in which officers falsely claim that evidence was in plain view in order to side-step the Fourth Amendment's search and seizure restrictions. Pl.'s Pro Se Suppl. Resp. Br. at 2; *People v. Ash*, 805 N.E.2d 649, 655 (Ill. 2004). But even these allegations are not enough to state a claim. To state a cause of action, Ellis must allege that the City has engaged in a systematic and widespread discriminatory practice. *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000) (to state a claim under § 1983, plaintiff must allege that "the City had a widespread practice that,

although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law"). Ellis certainly alleges that these improper police tactics were used in his arrest, but he has not pled any *facts* that plausibly allege that this practice of fabricating evidence and providing false testimony is widespread in the City. For example, he does not allege any similar incidents of wrongdoing against other individuals, nor does he include any allegations that might show a pattern of unconstitutional conduct on the part of the City and its officers. Simply including conclusory language that the City has adopted an unwritten policy permitting officers to fabricate evidence and to provide "dropsy" testimony, without some sort of factual support, is  insufficient to state a claim. Accordingly, the Court dismisses Ellis's *Monell* claim.

### D. Count Five (Conspiracy)

Ellis next alleges that the Defendant Officers conspired to falsely arrest and convict him, in violation of § 1983 and Illinois law.[10] Am. Compl. ¶¶ 23, 29. The Defendant Officers argue that both of Ellis's conspiracy claims should be dismissed: his § 1983 conspiracy claim because "he fails to allege an underlying constitutional violation," and his state law claim because he "fails to state an underlying independent cause of action." Defs.'s Joint Mot. to Dismiss at 12. In response, Ellis argues that he has sufficiently pled his conspiracy claims. Pl.'s Resp. Br. at 6. He

---

[10]Ordinarily, after dismissing all federal-law claims, the Court would relinquish supplemental jurisdiction over the state-law claims. But neither side asks to do that, and given the time invested in briefing the state-law issues, and the relative clarity as to the answers to the state-law issues, the Court will decide the state-law claims too.

contends he has alleged Fourth and Fourteenth Amendment violations, and that his complaint "sufficiently alleges a cause of action for false arrest." *Id.* at 6-7.

But Ellis is mistaken. Under § 1983, it is well settled that conspiracy does not provide an independent basis of liability. *See Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008). Instead, there must be an underlying constitutional violation attached to the conspiracy claim. Said another way: "For liability under § 1983 to attach to a conspiracy claim, defendants must conspire to deny plaintiffs their constitutional rights," as "there is no constitutional violation in conspiring to cover up an action which does not itself violate the constitution." *Hill v. Shobe*, 93 F.3d 418, 422 (7th Cir. 1996); *see also Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000) (noting that "[t]he jury's conclusion that [the plaintiff] suffered no constitutional injury … foreclose[d] relief on the [plaintiff's § 1983] conspiracy claim"). Here, Ellis contends that he has sufficiently alleged Fourth and Fourteenth Amendment violations. But as previously discussed, that is wrong. Both Ellis's Fourth and Fourteenth Amendment claims are barred by *Heck* because the allegations underlying those claims—that the Defendant Officers fabricated evidence and provided false testimony—go to the heart of Ellis's state court conviction. Because these constitutional claims are not yet cognizable, Ellis cannot rely on them to support his conspiracy claim. Accordingly, Ellis's § 1983 conspiracy claim must be dismissed.

The same holds true for Ellis's state-law conspiracy claim. In Illinois, civil conspiracy is likewise not considered an independent tort: if a "plaintiff fails to state

an independent cause of action underlying his conspiracy allegations, the claim for conspiracy also fails." *Thomas v. Fuerst*, 803 N.E.2d 619, 626 (Ill. App. Ct. 2004). The only underlying cause of action Ellis points to in support of his conspiracy claim is for false arrest. Pl.'s Resp. Br. at 7. But again, Ellis's Fourth Amendment false arrest claim is barred by *Heck*. And Ellis does not assert a state-based false arrest claim in his complaint, nor could he. Under Illinois law, false arrest claims accrue on the date of the arrest and are subject to a one-year statute of limitations. *See Rizzo v. Wheaton Police Dep't*, 2010 WL 1996386, at *2 (N.D. Ill. May 17, 2010); 745 ILCS 10/8-101. Ellis was arrested in April 2011; he did not file his initial complaint in this case until March 2013. Even if Ellis had wanted to bring a state-based false arrest claim, his claim would have been time-barred. Under Illinois law, conspiracy claims cannot be predicated on time-barred claims. *Gordon v. Devine*, 2008 WL 4594354, at *7 (N.D. Ill. Oct. 14, 2008) (holding that a conspiracy claim under Illinois law is timely only if based on timely claims). Because Ellis has failed to provide an underlying violation for his conspiracy claims, these claims fail.

### E. Count Six (Emotional Distress Claim)

Finally, the Defendant Officers contend that Ellis's intentional infliction of emotional distress claim is time-barred. Defs.'s Joint Mot. to Dismiss at 13. Defendants are again correct. Under Illinois law, "[t]he limitations period for tort claims, such as intentional infliction of emotional distress, against governmental entities and their employees … is only one year." *Evans v. City of Chicago*, 434 F.3d 916, 934 (7th Cir. 2006), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d

965 (7th Cir. 2013); 745 ILCS 10/8-101. And emotional distress claims that arise "in the course of arrest and prosecution accrue[] on the date of the arrest." *Bridewell v. Eberle*, 730 F.3d 672, 678 (7th Cir. 2013).

Ellis was arrested on April 27, 2011, and he filed his initial *pro se* complaint on March 29, 2013. By the time Ellis filed his initial complaint, the one-year statute of limitations on his emotional distress claim had already run. Although it is certainly understandable that Ellis—not being a lawyer—might not have known that this claim is subject to a one-year limitations period, *see* Pl.'s Pro Se Resp. Br. at 3, that does not change the fact that Ellis's claim is time-barred. Accordingly, this claim must also be dismissed.

## IV. Conclusion

For the reasons discussed above, the Defendants' motion [R. 64] is granted and Ellis's case is dismissed.

ENTERED:

<u>     s/Edmond E. Chang     </u>
Honorable Edmond E. Chang
United States District Judge

DATE: January 19, 2016